```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
LEONARD GUGICK,

                            Plaintiff,                              OPINION AND ORDER

        - against -                                                 No. 11-CV-6294 (CS)

MELVILLE CAPITAL, LLC, ROBERT STARK and
THOMAS B. STRICKLAND,

                            Defendants.
-------------------------------------------------------------------x
```

Appearances:

Gordon Locke, Esq.
New Rochelle, New York
*Counsel for Plaintiff*

Marc J. Ross
Richard J. Babnick Jr.
Gary A. Varnavides
Sichenzia Ross Friedman Ference LLP
New York, New York
*Counsel for Defendants*

Seibel, J.

Before the Court are the Motion of Defendants Melville Capital, LLC ("Melville"), Robert Stark and Thomas B. Strickland for Summary Judgment, (Doc. 24), and the Cross-Motion of Plaintiff Leonard Gugick for Partial Summary Judgment, (Doc. 66). For the reasons stated below, Defendants' Motion is GRANTED and Plaintiff's Motion is DENIED.

**I. Background**

The following facts are set forth based upon the parties' Local Civil Rule 56.1 statements and supporting materials, and are undisputed except as noted. I set forth only those facts relevant to my decision.

In September 2007, Plaintiff's son, Jeffrey Gugick ("Jeffrey"), met Strickland at a conference in New York.  (P's 56.1 ¶ 6.)[1]  Strickland told Jeffrey that Strickland was a Senior Vice President of Melville and a Life Settlements Broker, whose business it was to monetize life insurance policies.  (*Id.* ¶ 7.)  Jeffrey told Plaintiff that he had met Strickland at a conference and that Melville sold life insurance policies, including original life insurance, because Plaintiff was interested in the life settlement business.  (Ds' 56.1 ¶¶ 12-13.)[2]  Specifically, Plaintiff was interested in purchasing a life insurance policy and selling it for profit after the policy's two-year contestability period had expired.  (*See id.* ¶ 14; P's 56.1 ¶ 13.)

Plaintiff and Strickland first discussed Plaintiff's interest in purchasing a life insurance policy on May 22, 2008, (*see* Ds' 56.1 ¶ 15), and Defendants worked with Plaintiff during the subsequent months to provide the necessary records to insurance carriers, (*id.* ¶ 16).  During this time, Strickland advised Plaintiff that based on Plaintiff's net worth and income, Plaintiff was eligible for a $5 million life insurance policy.  (P's 56.1 ¶ 19.)  Plaintiff alleges that he asked Defendants several times how much of a profit he would make if he sold the insurance policy after two years, and Defendants repeatedly assured Plaintiff that he would receive approximately $400,000 to $500,000 in profit.  (*Id.* ¶¶ 20-22, 24-25, 30, 32-33.)  Defendants deny making such representations.  (Ds' 56.1 Resp. ¶¶ 20-22, 24-25, 30, 32-33.)[3]

In early September 2008, an insurance industry publication, The Life Settlement Report, indicated that one of the largest life expectancy underwriters, 21st Services, had revised its mortality tables and lengthened its estimates of how long people are likely to live.  (P's 56.1 ¶

---

[1] "P's 56.1" refers to Plaintiff, Leonard Gugick's Statement of Material Undisputed Facts Submitted in Conjunction with Plaintiff's Motion for Partial Summary Judgment.  (Doc. 76.)

[2] "Ds' 56.1" refers to Defendants' Statement of Undisputed Material Facts Pursuant to L.R. 56.1.  (Doc. 26.)

[3] "Ds' 56.1 Resp." refers to Defendants' Response to Plaintiff's Statement of Undisputed Material Facts Pursuant to L.R. 56.1(b).  (Doc. 32.)

27; P's Decl. Ex. A.)[4]  The publication stated that the life expectancy modification could significantly reduce the value of life settlements investments.  (P's 56.1 ¶ 27; P's Decl. Ex. A.)  On September 18, 2008, the Life Settlement Report published another article entitled "Market Rocked as 21st Services Changes Mortality Tables."  (P's 56.1 ¶ 34.)  Plaintiff alleges that Melville and Stark were or should have been aware of both articles, but failed to disclose to Plaintiff the publication's contents and how 21st Services' change in life expectancy could affect his potential purchase of a life insurance policy.  (P's 56.1 ¶¶ 28-29, 35-36.)  Defendants contend, however, that they were not subscribers of the Life Settlement Report, and only became aware of the change in the 21st Services life expectancy tables around the time or after Plaintiff purchased his life insurance policy.  (Ds' 56.1 Resp. ¶¶ 28, 34-37.)  Further, Stark testified that when he learned about 21st Services' modification, he did not tell Plaintiff because 21st Services is only one of seven underwriters and "how that would affect [Plaintiff] . . . two years later[] [wa]s quite unknown."  (Varnavides Decl. Ex. 4 ("Stark 6/28/12 Dep."), at 86-87.)[5]

On October 17, 2008 or October 19, 2008, Plaintiff paid a $310,000 premium to purchase a life insurance policy (the "Policy") from Lincoln National Life Insurance Company.  (Ds' 56.1 Resp. ¶ 50; Complaint ("Compl."), (Doc. 1), ¶¶ 37-38.)  Plaintiff refers to this event as "the Investment Transaction," which he defines as the "purchase and sale of the Policy."  (P's 56.1 ¶ 50; Compl. ¶ 7.)  Plaintiff alleges that the Investment Transaction was memorialized by two letters.  (P's 56.1 ¶¶ 49-50, 63.)  The first letter, which Stark signed, is dated October 16, 2008 and encloses documents pertaining to the Policy.  (Compl. Ex. B.)  The second letter, which both Stark and Plaintiff signed, is dated November 3, 2008 and states, among other things, that

---

[4] "P's Decl." refers to the Declaration and Averment of Leonard Gugick [in] Opposition to the Defendants [*sic*] Motion for Summary Judgment.  (Doc. 64.)

[5] "Varnavides Decl." refers to the Declaration of Gary A. Varnavides in Support of Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment.  (Doc. 34.)

Plaintiff may "potential[ly] desire" to sell the Policy in the future, and "irrevocably appoint[s] Melville . . . as exclusive Life Settlement Broker and Agent of Record for the Policy for the purpose of negotiating the sale of said Policy." (Compl. Ex. A.)[6]  It further provides for a $50,000 commission for Melville, but only if a sale is completed within four years beyond the contestable period. (*Id.*)

In approximately June 2010, almost two years after Plaintiff purchased the Policy, Plaintiff spoke with Stark and reminded him to sell the Policy so that Plaintiff could recover a profit. (Varnavides Decl. Ex. 9 ("P's Dep."), at 260-61; P's 56.1 ¶ 77.)  In December 2010, Melville sold Plaintiff's policy for $80,000, causing Plaintiff to suffer a substantial loss. (P's 56.1 ¶ 82.)

Plaintiff commenced this action on September 9, 2011, bringing claims for violation of federal securities regulations, breach of contract, fraud in the inducement, and breach of fiduciary duty. (Compl. ¶¶ 47-73.)  Defendants now seek summary judgment on all claims, (Doc. 24), and Plaintiff seeks summary judgment on the securities law and breach of fiduciary duty claims, (Doc. 66).

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be

---

[6] The letter is dated November 3, 2008, although it appears that Plaintiff signed it on November 4, 2008. For purposes of these Motions, I will refer to it as the "November 3, 2008 letter."

4

counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials

– including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

### III. Analysis

#### A. Federal Securities Claims

Plaintiff alleges that Defendants failed to (1) register the Lincoln Policy, and (2) disclose the material risks involved in purchasing the Policy – specifically, that a change in life expectancy tables could affect the value of the Policy – in violation of federal securities regulations. (*See* Compl. ¶¶ 5, 7, 67, 71-72.) Defendants move for dismissal of this claim on the basis (among others) that a life insurance policy, such as the one Plaintiff purchased, does not constitute a "security" under federal securities law, and thus is expressly exempt from regulations enacted under the Securities Act of 1933 (the "1933 Act") or the Securities and Exchange Act of 1934 (the "1934 Act"). (Ds' Mem. 3-4.)[7]

Section 3(a)(8) of the 1933 Act provides that "[a]ny insurance or endowment policy . . . issued by a corporation subject to [state regulation]" is exempt from registration under the 1933 Act. 15 U.S.C. § 77c(a)(8) (2012); *see Tcherepnin v. Knight*, 389 U.S. 332, 342 n.30 (1967) (finding 1934 Act defined "security" in "virtually identical" manner to 1933 Act and noting that "Congress specifically stated that insurance policies are not to be regarded as securities subject to the provisions of the [1934 Act]") (internal quotation marks and citation omitted). Because insurance regulation is traditionally the province of the states, "insurance products subject to state regulation are exempt from regulation by the SEC." *Ring v. AXA Fin., Inc.*, 483 F.3d 95, 98 (2d Cir. 2007); *see Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1130 (7th Cir. 1986) (any instrument that qualifies as insurance or annuity contract under Section 3(a)(8) of the 1933

---

[7] "Ds' Mem." refers to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment. (Doc. 27.)

6

Act is insulated from private actions brought under the 1934 Act). Lincoln National, which issued the Policy to Plaintiff, is licensed with, and subject to the supervision of, the State of Texas Department of Insurance. (Ds' 56.1 ¶ 27.)

Plaintiff concedes that the Policy alone is not a security within the meaning of the 1933 Act, (P's Opp. 13; P's Reply 5),[8] but argues that the Investment Transaction, as evidenced by the October 18 and November 3, 2008 letters documenting the Policy's purchase and the agreement for Melville to serve as Plaintiff's life settlement broker in connection with the Policy's potential future sale, created an "investment contract," which constitutes a security, (P's Opp. 13-15; *see* Compl. Exs. A, B).

The term "security" for purposes of the 1934 Act includes any "investment contract." 15 U.S.C. §§ 77b(a)(1), 78c(a)(10). In *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), the Supreme Court found that for an investment contract to constitute a security, three elements must be present: (i) an investment of money; (ii) in a common enterprise; (iii) with the profits to be derived solely from the efforts of others. *See Howey*, 328 U.S. at 298-99. In the Second Circuit, to establish the existence of a "common enterprise," a plaintiff must show either "horizontal commonality" or "strict vertical commonality."[9] *See Revak v. SEC Realty Corp.*, 18 F.3d 81, 87-88 (2d Cir. 1994) (also noting that "broad vertical commonality," recognized by other jurisdictions, is "inconsistent with *Howey*") (citation omitted).

---

[8] "P's Opp." refers to Plaintiff, Leonard Gugick's Memorandum of Law Submitted in Opposition to Defendants' Motion for Summary Judgment. (Doc. 84.) "P's Reply" refers to Plaintiff, Leonard Gugick's Memorandum of Law Submitted in Reply to Defendants' Opposition to, and in Further Support of, His Motion for Partial Summary Judgment. (Doc. 80.)

[9] In *Revak*, the Second Circuit declined to reach the issue of whether the existence of strict vertical commonality in itself "gives rise to a common enterprise." *Revak*, 18 F.3d at 88. District courts in this Circuit, however, have concluded that strict vertical commonality is sufficient to demonstrate a "common enterprise" under *Howey*. *See In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 360 (S.D.N.Y. 2011) (collecting cases).

Defendants contend that Plaintiff has not established a common enterprise because Plaintiff cannot demonstrate horizontal or strict vertical commonality.  (Ds' Opp. 3-7.)[10]  Plaintiff does not dispute that horizontal commonality – which requires pooling of assets and shared success in the venture, *see Revak*, 18 F.3d at 87 – is lacking, but argues he has shown that strict vertical commonality exists.  (P's Reply 6-7.)

Strict vertical commonality requires that "the fortunes of plaintiff and defendants are linked so that they rise and fall together."  *Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.*, 205 F. Supp. 2d 243, 249 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).[11]  "Stated otherwise, strict vertical commonality exists where there is a one-to-one relationship between the investor and investment manager such that there is an interdependence of *both profits and losses* of the investment."  *Marini v. Adamo*, 812 F. Supp. 2d 243, 256 (E.D.N.Y. 2011) (emphasis in original) (internal quotation marks omitted).

The November 3, 2008 letter indicates that if Plaintiff were to sell the Policy within four years after the contestability period expires, Melville would receive a $50,000 commission.  (Compl. Ex. A.)  Defendants argue that no interdependence or linking of the parties' fortunes exists because, pursuant to the November 3, 2008 letter, Melville would receive a fixed $50,000 commission regardless of whether Plaintiff realized a profit or loss on the sale of the Policy.  (Ds' Opp. 7.)  According to Defendants, Melville was merely acting as a broker, and the broker-client relationship generally does not demonstrate strict vertical commonality.  (*Id.* at 6 (citing *Lowenbraun v. L.F. Rothschild, Unterberg, Towbin*, 685 F. Supp. 336, 341 (S.D.N.Y. 1988)).)

---

[10] "Ds' Opp." refers to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment. (Doc. 35.)

[11] "Broad vertical commonality" – which is insufficient in the Second Circuit to show a common enterprise – requires only that the fortunes of the investors be linked to the efforts (not the fortunes) of the promoter.  *Revak*, 18 F.3d at 88.

8

I agree with Defendants that strict vertical commonality is lacking here.  As Plaintiff concedes, he suffered a substantial loss when he sold the Policy for $80,000 in December 2010.  (P's 56.1 ¶ 82 ("On December 30, 2010, [Plaintiff], to mitigate his damages, through the efforts of Melville, sold the Policy for $80,000 thereby suffering substantial losses.").)  Melville, on the other hand, was still, according to the November 3, 2008 letter, entitled to the $50,000 commission.  (Ds' 56.1 ¶ 33.)  In situations where courts have found strict vertical commonality, the promoter's fees were directly tied to whether the investor secured a profit on his investment.  *See e.g.*, *Jeanneret Assocs.*, 769 F. Supp. 2d at 360 (where investment manager was to be paid, in part, through performance fee equal to 20% of profits in investment account, defendant's compensation was "dependent on the successful performance of the investment account" contrary to "a stockbroker, who collects a fee for every consummated transaction"); *Walther v. Maricopa Int'l Inv. Corp.*, No. 97-CV-4816, 1998 WL 186736, at *7 (S.D.N.Y. Apr. 17, 1998) (strict commonality existed where defendants "were to be paid only if [plaintiff's] funds made substantial gains," whereas "if [plaintiff's] investment did not perform well, the defendants were not paid") (internal quotation marks omitted); *see also Lowenbraun*, 685 F. Supp. at 341 (strict vertical commonality did not exist where "profits and losses were not independent since the broker allegedly profited from the commissions while plaintiffs suffered losses"); *Morgan v. Fin. Planning Assocs.*, 701 F. Supp. 923, 926 (D. Mass. 1988) (same).  Because Melville was entitled to a commission under the November 3, 2008 letter regardless of whether Plaintiff made a profit from the sale of the Policy, Plaintiff has not demonstrated that strict vertical commonality exists, and therefore the "Investment Transaction" does not constitute an investment contract for purposes of the 1934 Act.[12]

---

[12] Plaintiff contends that *Zang v. Alliance Fin. Servs. of Ill., Ltd.*, No. 08-CV-3370, 2010 WL 3842366 (N.D. Ill. Sept. 27, 2010), should persuade this Court that a common enterprise existed.  (Plaintiff, Leonard Gugick's

Defendants' Motion to Dismiss Plaintiff's claims for breach of the federal securities laws is accordingly granted.

### B. *State-Law Claims*

After disposing of the federal securities law claims, there are no federal causes of action left to try. The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Where, as here, the remaining state law claims are distinct from the federal claim and do not implicate the federal preemption doctrine, a district court need not exercise supplemental jurisdiction over the surviving state-law claims. *See Drake v. Lab. Corp. of Am. Holdings*, 323 F. Supp. 2d 449, 454 (E.D.N.Y. 2004) (collecting cases). Accordingly, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion is GRANTED and Plaintiff's Cross-Motion is DENIED. The federal securities law claim is dismissed with prejudice and the remaining claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 24, 66), and close the case.

---

Memorandum of Law Submitted in Support of his Motion for Partial Summary Judgment 12. This document was not properly filed on the Electronic Case Files System, and Plaintiff is directed to file it immediately.) Plaintiff's contention is unavailing for several reasons. First, *Zang* did not involve a life settlement transaction similar to that in the instant matter. In *Zang*, the plaintiff contacted the defendant for assistance in purchasing companies through a scheme which made use of viatical settlements – *i.e.*, the right to receive life insurance policy proceeds at death from the original insurance policy holders – as investment securities to finance the purchase. *See Zang*, 2010 WL 3842366, at *1. Further, contrary to Plaintiff's assertion, nowhere in *Zang* did the court note – in dicta or otherwise – that a common enterprise would have been found if the court could consider strict vertical commonality. Rather, the *Zang* court declined the plaintiff's invitation to adopt the strict vertical commonality test, because it was bound by Seventh Circuit precedent which recognized only the horizontal commonality test. *See id.* at *5. Finally, even if *Zang* was exactly as Plaintiff represented, it would not be binding on this Court.

**SO ORDERED.**

Dated: January 31, 2014
White Plains, New York

Cathy Seibel
CATHY SEIBEL, U.S.D.J.